1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          SOUTHERN DISTRICT OF CALIFORNIA

10

11  MUSTAFA SIRAT,                    )   Civil No. 06cv0848 L(RBB)
                                      )
12              Petitioner,           )   **REPORT AND RECOMMENDATION RE:**
                                      )   **GRANTING MOTION TO DISMISS**
13  v.                                )   **PETITION FOR WRIT OF HABEAS**
                                      )   **CORPUS [DOC. NO. 10]**
14  JAMES E. TILTON, Secretary of     )
    the California Department of      )
15  Corrections and Rehabilitation,   )
                                      )
16              Respondent.           )
    _____   )
17

18       Mustafa Sirat, a paroled state prisoner proceeding <u>pro se</u>,

19  filed the pending Petition for Writ of Habeas Corpus [doc. no. 1]

20  on April 20, 2006.  Petitioner does not distinctly allege separate

21  grounds for relief.  (<u>See</u> Pet. 6-8.)  Instead, Sirat submits a

22  Memorandum of Points and Authorities which argues that he is

23  entitled to habeas relief.  (Pet. Attach. Mem. of P. & A. 1-27.)

24       In his Petition and Memorandum, Sirat appears to allege the

25  following seven grounds for relief, claiming that the trial court

26  erred:  (1) The trial judge improperly increased his sentence

27  beyond the statutory maximum without specific fact-finding by the

28  jury as required by <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); (2)

1  he erroneously instructed the jury with CALJIC No. 17.41.1, which
2  infringed Petitioner's right to a jury trial and deprived him of
3  due process because the instruction chilled the jury's deliberative
4  process and compromised the independent and impartial decision of
5  jurors; (3) the evidentiary rulings amounted to an abuse of
6  discretion that violated Petitioner's due process rights and his
7  right to a fair trial; (4) the trial judge made multiple errors in
8  ruling on the admissibility of evidence and in instructing the
9  jury, and their cumulative effect was prejudicial and violated his
10 Fourth, Fifth, Sixth, and Fourteenth Amendment rights; (5) the
11 trial judge erred in admitting prior act evidence to show Sirat's
12 propensity to commit crimes, and the judge erred further in
13 instructing the jury with CALJIC No. 2.50.02, leading jurors to
14 believe that they could convict Petitioner on improper grounds; and
15 (6) the failure to strike evidence that the prosecutor did not
16 disclose to the defense violated Petitioner's Sixth Amendment
17 compulsory process right and denied him a meaningful opportunity to
18 present a complete defense.  (See Pet. Attach. Mem. of P. & A. 3-
19 27.)  Lastly, Sirat claims that he was denied equal protection when
20 the California Supreme Court did not decide his case in accordance
21 with People v. Engelman, 28 Cal. 4th 436, 49 P.3d 209, 121 Cal.
22 Rptr. 2d 862 (2002), where the court concluded that CALJIC No.
23 17.41.1 should no longer be given in criminal trials.  (Pet.
24 Attach. Mem. of P. & A.  4.)

25     The Petition in this case was originally filed pursuant to 28
26 U.S.C. § 2241.  On October 26, 2006, United States District Judge
27 M. James Lorenz issued an Order Construing the Petition as Brought
28 Pursuant to 28 U.S.C. § 2254 [doc. no. 6] because Sirat is

challenging his state court conviction.  On December 11, 2006, Respondent filed a Motion to Dismiss for Lack of Jurisdiction [doc. no. 10] and a Memorandum of Points and Authorities in Support of Motion [doc. no. 10].  Respondent argues that the Petition should be dismissed because it is a second or successive habeas corpus application filed without authorization from the Ninth Circuit Court of Appeals, and it is barred by the statute of limitations. (Resp't's Mem. 7-10.)  Respondent also alleges that ground six of the Petition fails to raise a federal question.  (Id. at 11.) Petitioner did not file any opposition to Respondent's Motion to Dismiss.  On March 2, 2007, the Court issued an Order to Show Cause [doc. no. 11] for Petitioner's failure to oppose the Motion.  Sirat failed to respond, and the Order to Show Cause was returned to the Court with the notation "paroled" [doc. no. 12].

This Court has reviewed the Petition, Respondent's Motion and Memorandum in Support of the Motion, and the lodgments.  For the reasons expressed below, the Court recommends that Respondent's Motion to Dismiss be **GRANTED**.

## I.   FACTUAL BACKGROUND

The facts underlying this case are stated in the April 10, 2002, court of appeal opinion in People v. Sirat.  (See Lodgment No. 1, People v. Sirat, No. D036061, slip op. (Cal. Ct. App. Apr. 10, 2002).)  The Court presumes these factual determinations are correct pursuant to 28 U.S.C. § 2254(e)(1).  28 U.S.C.A. § 2254(e)(1) (West 2006).

In 1997, Sirat married Bahijah Ab Salam.  (Id. at 2.)  They moved to the United States in 1998 and began living with Petitioner's family.  (Id.)  Because Sirat wanted to show his

family that he was "macho," Ab Salam was not allowed to have friends, choose her own clothing or hairstyle, or leave the house without Sirat's permission.  (<u>Id.</u>)  Ab Salam was only permitted to attend English classes and go to work.  (<u>Id.</u>)

Ab Salam became pregnant in 1998, and in December 1998, she and Sirat got into an argument which resulted in Petitioner kicking her in the abdomen between five and ten times.  (<u>Id.</u>)  Although Ab Salam screamed, no one in Sirat's family helped her.  (<u>Id.</u>)  The next day, she suffered from vaginal bleeding and suspected she was having a miscarriage.  (<u>Id.</u>)  Because she did not have health insurance, she did not seek medical assistance.  (<u>Id.</u>)  The bleeding increased over the next two days, and she also suffered from dizziness.  (<u>Id.</u> at 2-3.)  Sirat took her to the Grossmont Hospital emergency room where hospital staff asked her if she had been physically abused.  (<u>Id.</u> at 3.)  Ab Salam feared Petitioner so she said she did not know how she became injured.  (<u>Id.</u>)  Physician Peter Colaprete examined Ab Salam at the emergency room and determined that she was in the early stages of pregnancy and would likely miscarry.  (<u>Id.</u>)  Dr. Colaprete referred her to OB/Gyn Surinder Tayebi for follow-up treatment.  (<u>Id.</u>)  Based on Dr. Taybei's report and all other medical records, Dr. Colaprete testified at trial that Ab Salam had in fact suffered a miscarriage which could have been caused by kicks to her abdomen.  (<u>Id.</u>)

In June 1999, Sirat forcibly sodomized Ab Salam because he was angry that she was still bleeding heavily from the miscarriage.  (<u>Id.</u>)  The sodomy went unreported because of Ab Salam's fear of Petitioner and her uneasiness in discussing the matter.  (<u>Id.</u>)  Shortly after this incident, Sirat took Ab Salam to a Planned

4

1  Parenthood clinic to address the bleeding and to obtain

2  contraceptives.  (<u>Id.</u>)  While at the clinic, Planned Parenthood

3  staff inquired about bruises on Ab Salam's body.  (<u>Id.</u>)  Because

4  she feared Sirat, Ab Salam denied any physical abuse and told the

5  staff she had hit a table.  (<u>Id.</u>)

6      On June 30, 1999, Ab Salam told Petitioner she wanted to move

7  out of his family's house into a place of her own.  (<u>Id.</u> at 3-4.)

8  At the time, she was lying on her back on the bed.  (<u>Id.</u> at 4.)

9  Sirat climbed on top of her, placed his knees on her thigh and

10 torso, grabbed her neck, and hit her.  (<u>Id.</u>)  Although other family

11 members were home and Ab Salam screamed for help, no one came.

12 (<u>Id.</u>)  The next morning, Ab Salam felt very weak and could barely

13 talk.  (<u>Id.</u>)  She called Mary Perret, a woman she met through her

14 English classes, and told her, "If anything happens to me, please

15 call my parents in Morocco."  (<u>Id.</u>)  Perret asked what was wrong,

16 but Ab Salam said, "I can't tell you -- I can't talk," then hung

17 up.  (<u>Id.</u>)  Concerned for her well-being, Perret and her husband

18 went to Ab Salam's house and took her to stay with them.  (<u>Id.</u>)

19 She was very thin, could barely walk, and had a number of old and

20 new bruises.  (<u>Id.</u>)  In a telephone conversation, Perret told

21 Petitioner that Ab Salam would be staying with her despite Sirat's

22 insistence that he would take her home.  (<u>Id.</u>)  Perret also told

23 Sirat that Ab Salam was ill and might die, to which he responded,

24 "Better she should die than not be here at home with me."  (<u>Id.</u> at

25 4-5.)

26     On July 2, 1999, Perret brought Ab Salam to a Planned

27 Parenthood clinic for a checkup.  (<u>Id.</u> at 4.)  Ab Salam finally

28 told the clinic staff about the physical abuse, the miscarriage,

06cv0848-L (RBB)

and the sodomy.  (Id.)  She also got a restraining order against Petitioner.  (Id. at 5.)  In August 1999, however, Ab Salam decided to cancel the restraining order.  (Id.)  Sirat had apologized to Ab Salam, and thinking that things had changed, she went back to him so they could start a new life.  (Id.)  They moved out of Sirat's family's house and got an apartment together.  (Id.)   While at the apartment, Sirat began behaving strangely.  (Id.)  He told Ab Salam that he had nightmares in which he was strangling her, that people were following him, and that he believed people on television and radio were laughing at him and talking about him.  (Id.)  One time Ab Salam could not find the kitchen knives, and Petitioner told her he hid them in the bedroom because he was afraid he might accidentally kill her.  (Id. at 5-6.)  He also became very jealous of Ab Salam.  (Id. at 5.)  In November 1999, they decided to separate; Ab Salam stayed in the apartment and Sirat moved back into his family's house.  (Id.)  Part of the separation agreement was that Petitioner would not contact Ab Salam; nevertheless, he called her thirty to forty times a day and came to the apartment almost daily.  (Id.)  He also checked on her at work and threatened to kill her if she left him permanently or if he caught her with another man.  (Id.)  Sirat also threatened to commit suicide. (Id.)  When Ab Salam said she would not feel guilty if he committed suicide, he said he would first kill her, then himself.  (Id.)

On November 21, 1999, only a week after Petitioner moved out, he left over fifty messages on Ab Salam's answering machine and went to the apartment approximately four times.  (Id. at 6.)  Ab Salam told him to leave each time.  (Id.)  The last time he went to the apartment, between 9:00 and 10:00 p.m., he knocked so long and

so loudly that Ab Salam opened the door. (<u>Id.</u>) When she opened the door, Sirat was convinced a man was with her because he smelled cockroach spray and thought it was a man's cologne. (<u>Id.</u>) Petitioner grabbed her arm and dragged her around the apartment looking for a man, which hurt and bruised Ab Salam's arm. (<u>Id.</u>) When Ab Salam said she was going to call the police, Sirat left. (<u>Id.</u>) She locked the door behind him, barricaded it shut with chairs, and called the police. (<u>Id.</u>) When they arrived, they found Petitioner outside the apartment; Ab Salam was inside the apartment and visibly upset and fearful. (<u>Id.</u>) After multiple requests by the police, Sirat finally left. (<u>Id.</u>)

The next day, Ab Salam began the process of obtaining another restraining order against Petitioner. (<u>Id.</u>) That night, Sirat was waiting for Ab Salam when she arrived home. (<u>Id.</u>) He threatened to kill her if she did not let him into the apartment. (<u>Id.</u> at 6-7.) She ran inside, locked the door, barricaded it with chairs, and called the police. (<u>Id.</u> at 7.) Officer Eliot Underhill responded to the scene. (<u>Id.</u>) Ab Salam reported the death threat, and Officer Underhill saw that she was crying, was visibly shaken, and had a recent bruise. (<u>Id.</u>) Ab Salam explained how she received the bruise from Petitioner the night before, and after she finished making her report, Sirat was arrested. (<u>Id.</u>) During Officer Underhill and Ab Salam's discussion, a neighbor knocked on the door; Ab Salam was so frightened that she urinated on herself. (<u>Id.</u>)

Neighbors testified on behalf of the defense at trial, stating that they never heard any fighting or screaming coming from Sirat and Ab Salam's apartment. (<u>Id.</u>) The couple's friends testified

06cv0848-L (RBB)

they did not know of any marital troubles or abuse.  (Id.)  Ab
Salam only told them she wanted to move out of Sirat's family's
house so she and Petitioner could get their own place.  (Id.)

Family members with whom Sirat and Ab Salam lived testified
that they did not know of any incidents where Petitioner physically
abused Ab Salam.  (Id.)  In fact, Sirat's mother stated that Ab
Salam attributed her vaginal bleeding to lifting a heavy closet
door.  (Id.)  Petitioner's sister testified that Ab Salam's
bleeding started after she moved a bed.  (Id.)  Sirat's friend
claimed that Ab Salam attributed the miscarriage to running.  (Id.
at 7-8.)  Both Petitioner's mother and sister believed that it was
Ab Salam who physically abused Sirat.  (Id. at 8.)

In rebuttal, police detective Daniel Willis testified that
Petitioner's mother and sister told him that Sirat and Ab Salam got
into a loud argument on June 30, 1999.  (Id.)  Petitioner's mother
saw both Sirat and Ab Salam in the bathroom; Petitioner was washing
blood off his face and Ab Salam was crying and vomiting.  (Id.)
Sirat told his mother that he hit Ab Salam after she scratched him.
(Id.)  Ab Salam told Petitioner's mother that she scratched him
after he hit her.  (Id.)  Sirat's mother also told detective Willis
that in her culture a husband can hit his wife if she does
something wrong.  (Id.)  After a while, however, she changed her
mind and said that a man should never hit his wife.  (Id.)
Petitioner's sister also said that according to her culture and
religion a husband can hit his wife if she does not do what he
tells her to do or if she leaves without his permission.  (Id.)

06cv0848-L (RBB)

## II.   PROCEDURAL BACKGROUND

In November 1999, Petitioner was convicted after a jury trial in San Diego Superior Court of inflicting corporal injury on a spouse, see Cal. Penal Code § 273.5(a), assault by means of force likely to produce great bodily injury, see Cal. Penal Code § 245(a)(1), making a terrorist threat, see Cal. Penal Code § 422, stalking, see Cal. Penal Code § 646.9(a), and misdemeanor spousal battery, see Cal. Penal Code § 243(e)(1).  (Lodgment No. 3, Sirat v. Hernandez, No. 03cv0027-IEG(NLS), Report & Recommendation at 1 (S.D. Cal. June 10, 2003).)  The jury also found that Petitioner inflicted great bodily injury during commission of the corporal injury on a spouse and the felony assault, see Cal. Penal Code § 12022.7(d).  (Lodgment No. 1, People v. Sirat, No. D036061, slip op. at 1.)  He was sentenced to a total of eight years and four months:  three years for the assault, four years for the great bodily injury enhancement, and two separate consecutive eight-month terms for the terrorist threat and stalking convictions.  (Id. at 1-2.)  The court stayed the sentence for the corporal injury conviction.  (Id. at 2.)

On April 10, 2002, the California Court of Appeal affirmed the judgment of the trial court.  (Id. at 1.)  On June 26, 2002, the California Supreme Court denied Sirat's petition for review. (Lodgment No. 2, People v. Sirat, No. S106916, order at 1 (Cal. June 26, 2002).)

Sirat, acting pro se, filed his first federal petition for a writ of habeas corpus on January 6, 2003.  (Lodgment No. 4, Sirat v. Hernandez, No. 03cv0027-IEG(NLS), Order Adopting R. & R. at 1 (S.D. Cal. Oct. 22, 2003).)  He claimed that the trial court erred

9

by (1) admitting evidence of prior acts of domestic violence
without balancing the prejudice with the evidence's probative
value; (2) instructing the jury with CALJIC No. 2.50.02, suggesting
that evidence of prior uncharged crimes may be sufficient to
convict; (3) failing to instruct the jury on the legal definition
of sodomy when the jury requested it; and (4) instructing the jury
with CALJIC No. 17.41.1, which confused the jury, deprived it of
its ability to decide the facts of the case, and stalled the jury
process.  (Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-
IEG(NLS), Report & Recommendation at 5.)  Lastly, Petitioner argued
that the cumulative effect of the trial court errors violated his
right to due process and a fair trial.  (<u>Id.</u>)  The court rejected
all of Sirat's claims, and the petition was denied on the merits on
October 23, 2003.  (<u>See</u> Lodgment No. 4, <u>Sirat v. Hernandez</u>, No.
03cv0027-IEG(NLS), Order Adopting R. & R. at 2.)

On November 6, 2003, Petitioner filed a notice of appeal and a
motion for a certificate of appealability.  (<u>See</u> Lodgment No. 5,
<u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Order Den. Certificate
of Appealability at 1 (S.D. Cal. Nov. 18, 2003).)  The district
court denied Sirat's motion on November 18, 2003, for failure to
make a substantial showing of the denial of any constitutional
rights.  (<u>Id.</u> at 2.)  On August 24, 2004, the Ninth Circuit Court
of Appeals granted Petitioner a certificate of appealability
regarding whether Sirat's federal substantive due process rights
were violated by (1) the application of California Evidence Code
section 1109 and (2) instructing the jury with CALJIC No. 2.50.02.
(Lodgment No. 6, <u>Sirat v. Hernandez</u>, No. 03-57061, order at 1 (9th
Cir. Aug. 24, 2004).)  The Ninth Circuit dismissed Petitioner's

case on May 19, 2005, for failure to perfect the appeal.  (Lodgment
No. 7, <u>Sirat v. Hernandez</u>, No. 03-57061, order at 1 (9th Cir. May
19, 2005).)

Sirat filed a petition for writ of habeas corpus in the
Supreme Court of California on January 4, 2006.  (Lodgment No. 8,
<u>In re Sirat</u>, No. S140082 (Cal. Jan. 18, 2006).)  The petition was
denied on January 18, 2006.  (<u>Id.</u> at 1.)

Petitioner then filed the pending Petition for Writ of Habeas
Corpus on April 20, 2006.  (Pet. 1.)  In the Petition, Sirat fails
to mention that this is not his first federal petition challenging
his 1999 conviction.  (<u>See</u> Pet.)  Petitioner claims seven grounds
for relief:  (1) the trial judge improperly increased his sentence
beyond the statutory maximum without specific fact-finding by the
jury as required by <u>Blakely v. Washington</u>, 542 U.S. 296 (2004); (2)
the court erroneously instructed the jury with CALJIC No. 17.41.1,
which infringed upon his right to a jury trial and deprived him of
due process because the instruction chilled the jury's deliberative
process and compromised the independent and impartial decision of
jurors; (3) the evidentiary rulings constituted an abuse of
discretion that violated Sirat's due process rights and his right
to a fair trial; (4) the trial judge's many errors in ruling on the
admissibility of evidence and in instructing the jury had the
cumulative effect of causing prejudice and unfairness in violation
of Petitioner's Fourth, Fifth, Sixth, and Fourteenth Amendment
rights; (5) the trial court erred in admitting prior act evidence
to show Sirat's propensity to commit crimes and in instructing the
jury on CALJIC No. 2.50.02, leading them to believe that they could
convict Petitioner based on prior acts, which violated his rights

11

to a fair trial and due process; and (6) the failure to strike testimony about evidence which was not disclosed to the defense in accordance with California Penal Code section 1054.1 violated Sirat's Sixth Amendment compulsory process right and denying him adequate representation because he was not given a meaningful opportunity to present a complete defense. (<u>See</u> Pet. Attach. Mem. of P. & A. 2-27.) Lastly, Petitioner claims that his right to equal protection was violated when the California Supreme Court did not decide his case in the same manner as <u>People v. Engelman</u>, 28 Cal. 4th 436, 49 P.3d 209, 121 Cal. Rptr. 2d 862 (2002), which held that CALJIC No. 17.41.1 should no longer be given in criminal trials. (<u>Id.</u> at 4.)

Only claims one, three, six and seven are presented to the federal court for the first time in the pending Petition. (<u>Compare</u> Pet'r's Mem., <u>with</u> Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Report & Recommendation at 5.) The other claims (grounds two, four, and five) were previously raised in Sirat's federal habeas petition filed in 2003. (<u>Compare</u> Pet'r's Mem., <u>with</u> Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Report & Recommendation at 5.)

On December 11, 2006, Respondent filed a Motion to Dismiss for Lack of Jurisdiction [doc. no. 10] and a Memorandum of Points and Authorities in Support of Motion [doc. no. 10]. Respondent argues that the Petition should be dismissed because it is a second or successive habeas corpus application filed without authorization from the Ninth Circuit Court of Appeals and because the statute of limitations has expired. (Resp't's Mem. 7-10.) Respondent also

1  asserts that ground six fails to state a claim which raises a

2  federal question.  (Id. at 11.)

3                    III.   STANDARD OF REVIEW

4       Because Sirat filed his Petition after April 24, 1996, it is

5  subject to the Antiterrorism and Effective Death Penalty Act

6  (AEDPA) of 1996.  28 U.S.C.A. § 2244 (West 2006).  AEDPA sets forth

7  the scope of review for federal habeas corpus claims:

8            The Supreme Court, a Justice thereof, a circuit
        judge, or a district court shall entertain an application
9        for a writ of habeas corpus in behalf of a person in
        custody pursuant to the judgment of a State court only on
10       the ground that he is in custody in violation of the
        Constitution or laws or treaties of the United States.
11

12  28 U.S.C.A. § 2254(a) (West 2006); see also Hernandez v. Ylst, 930

13  F.2d 714, 719 (9th Cir. 1991).

14      In 1996, Congress "worked substantial changes to the law of

15  habeas corpus."  Moore v. Calderon, 108 F.3d 261, 263 (9th Cir.

16  1997).  Amended § 2254(d) now reads:

17           An application for a writ of habeas corpus on behalf
        of a person in custody pursuant to the judgment of a
18       State court shall not be granted with respect to any
        claim that was adjudicated on the merits in State court
19       proceedings unless the adjudication of the claim --

20           (1) resulted in a decision that was contrary
            to, or involved an unreasonable application of,
21           clearly established Federal law, as determined
            by the Supreme Court of the United States; or
22
            (2) resulted in a decision that was based on an
23           unreasonable determination of the facts in
            light of the evidence presented in the State
24           court proceeding.

25  28 U.S.C.A. § 2254(d) (West 2006).

26      To present a cognizable federal habeas corpus claim, a state

27  prisoner must allege that his conviction was obtained "in violation

28  of the Constitution or laws or treaties of the United States."  See

                                13

28 U.S.C.A. § 2254(a) (West 2006).  Petitioner must allege that the state court violated his federal constitutional rights.  See Reed v. Farley, 512 U.S. 339, 347 (1994); Hernandez, 930 F.2d at 719; Jackson v. Ylst, 921 F.2d 882, 885 (9th Cir. 1990).

A federal district court does "not sit as a 'super' state supreme court" with general supervisory authority over the proper application of state law.  Smith v. McCotter, 786 F.2d 697, 700 (5th Cir. 1986); see also Lewis v. Jeffers, 497 U.S. 764, 780 (1990) (holding that federal habeas courts must respect a state court's application of state law); Jackson, 921 F.2d at 885 (concluding that federal courts have no authority to review a state's application of its law).  Federal courts may grant habeas relief only to correct errors of federal constitutional magnitude.  Oxborrow v. Eikenberry, 877 F.2d 1395, 1400 (9th Cir. 1989) (stating that federal courts are not concerned with errors of state law unless they rise to the level of a constitutional violation).

The Supreme Court, in Lockyer v. Andrade, 538 U.S. 63 (2003), stated that "AEDPA does not require a federal habeas court to adopt any one methodology in deciding the only question that matters under § 2254(d)(1) -- whether a state court decision is contrary to, or involved an unreasonable application of, clearly established Federal law."  Id. at 71 (citation omitted).  In other words, a federal court is not required to review the state court decision de novo.  Id.  Rather, a federal court can proceed directly to the reasonableness analysis under § 2254(d)(1).  Id.

The "novelty" in § 2254(d)(1) is "the reference to 'Federal law, as determined by the Supreme Court of the United States.'"  Lindh v. Murphy, 96 F.3d 856, 869 (7th Cir. 1996) (en banc), rev'd

14

on other grounds, 521 U.S. 320 (1997) (emphasis added).  Section 2254(d)(1) "explicitly identifies only the Supreme Court as the font of 'clearly established' rules."  Id.  "[A] state court decision may not be overturned on habeas corpus review, for example, because of a conflict with Ninth Circuit-based law."  Moore, 108 F.3d at 264.  "[A] writ may issue only when the state court decision is 'contrary to, or involved an unreasonable application of,' an authoritative decision of the Supreme Court."  Id.; see also Baylor v. Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996); Childress v. Johnson, 103 F.3d 1221, 1225 (5th Cir. 1997); Devin v. DeTella, 101 F.3d 1206, 1208 (7th Cir. 1996).

## IV. DISCUSSION

Respondent argues the Petition should be dismissed on the grounds that it is a second or successive habeas corpus application, and it was filed after the expiration of AEDPA's statute of limitations.  (Resp't's Mem. 7-10.)  Additionally, Respondent contends that ground six fails to raise a federal question.  (Id. at 11.)

**A.    Authorization for a Successive Petition**

Respondent claims that the Petition should be dismissed because Petitioner is barred from filing a second habeas petition without an order from the Ninth Circuit authorizing that it be filed.  (Resp't's Mem. 7.)  Respondent asserts that grounds two, three, and five of the present Petition were presented in Sirat's prior federal petition and are therefore barred.  Additionally, he claims that Petitioner's other grounds for relief cannot be raised until he receives authorization from the Ninth Circuit.  (Id. (citing 28 U.S.C. § 2244(b).)

15

1    In Sirat's 2003 petition, he raised five claims:  (1) The
2    trial court's admission of evidence of prior acts of domestic
3    violence without balancing the prejudice violated his rights to a
4    fair trial and due process; (2) the trial judge erred in
5    instructing the jury with CALJIC No. 2.50.02 because it suggested
6    that evidence of prior uncharged crimes may have been sufficient to
7    convict Sirat; (3) the trial court failed to instruct the jury on
8    the legal definition of sodomy, violating Sirat's due process
9    rights; (4) the trial court erred in instructing the jury with
10   CALJIC No. 17.41.1 because it deprived the jury of its ability to
11   decide the facts of the case, may have confused the jury, and
12   stalled the jury process; and (5) cumulative error violated
13   Petitioner's fair trial and due process rights.  (Lodgment No. 3,
14   Sirat v. Hernandez, No. 03cv0027-IEG(NLS), Report & Recommendation
15   at 5.)

16   Claims one and two of Sirat's 2003 petition are comparable to
17   the fifth claim in the present petition.  Sirat alleges in claim
18   five that the trial judge erred in admitting prior act evidence to
19   show his propensity to commit crimes.  (Pet. Attach. Mem. of P. &
20   A. 15-16, 20-24.)  Petitioner further alleges that by instructing
21   the jury with CALJIC No. 2.50.02, the trial court led the jury to
22   believe that it could convict Sirat based on evidence of prior
23   acts, which violated his fair trial and due process rights.  (Id.
24   at 20, 26-27.)  Claim four of Sirat's 2003 petition is identical to
25   claim two of his present petition, in which he contends that the
26   trial judge erroneously instructed the jury with CALJIC No.
27   17.41.1, which infringed Petitioner's right to a jury trial and
28   deprived him of due process because the instruction chilled the

jury's deliberative process and compromised the independent and impartial decision of the jurors.  (Id. at 8.)  Additionally, claim five in Sirat's 2003 petition is the same claim of cumulative error that Sirat makes in claim four of the present petition.  (Id. at 12.)

A "second or successive" petition is one filed after a previous petition raising the same claims that have been decided on their merits or raising claims that could have been raised in a previous petition.  Cooper v. Calderon, 274 F.3d 1270, 1273 (9th Cir. 2001) ("Generally, a new petition is 'second or successive' if it raises claims that were or could have been adjudicated on their merits in an earlier petition.").

Section 2244(b)(1) directs that "[a] claim presented in a second or successive habeas corpus application under section 2254 that was presented in a prior application shall be dismissed."  28 U.S.C.A. § 2244(b)(1) (West 2006).  Also, a new claim presented in a second or successive habeas must be dismissed unless (1) the claim rests on a new rule of constitutional law that was previously unavailable and which the Supreme Court has made retroactive to cases on collateral review, or (2) the facts underlying the claim could not have been discovered previously through the exercise of due diligence, and the facts establish by clear and convincing evidence that no reasonable factfinder would have found the petitioner guilty of the underlying offense absent constitutional error.  28 U.S.C.A. § 2244(b)(2)(A)-(B) (West 2006).  "Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate

court of appeals for an order authorizing the district court to consider the application."  28 U.S.C.A § 2244(b)(3)(A) (West 2006).

Claims two, four, and five of the present Petition are essentially identical to claims one, two, four and five of Sirat's 2003 petition.  (<u>Compare</u> Pet. Attach. Mem. of P. & A. 3-27, <u>with</u> Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Report & Recommendation at 5.)  Accordingly, a petition making these claims is a "second or successive" petition and cannot be filed unless it fits within the exceptions provided in 28 U.S.C. § 2244(b)(2)-(3).

Ground two of the present petition alleges that instructing the jury with CALJIC No. 17.41.1 deprived Sirat of due process because it chilled jury deliberation, stalled the jury process, deprived the jury of the ability to decide the facts of the case, and may have confused the jury.  (Pet. Attach. Mem. of P. & A. 4, 8-9.)  This claim was raised in Sirat's 2003 petition, and it was rejected by Magistrate Judge Nita L. Stormes, who concluded that the instruction "did not infect the entire trial such that Petitioner's due process rights were violated."  (Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Report & Recommendation at 13.)

In ground four of the present Petition, Sirat alleges cumulative error.  (Pet. Attach. Mem. of P. & A. 12.)  This claim was also rejected in 2003, when Magistrate Judge Nita L. Stormes found no trial error and, therefore, no cumulative error.  Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-IEG(NLS), Report & Recommendation at 13.)

Ground five claims that the trial judge erred in admitting prior act evidence to show Petitioner's propensity to commit crimes

and in instructing the jury with CALJIC No. 2.50.02, which led jurors to believe they could convict based on evidence of prior uncharged crimes.  (Pet. Attach. Mem. of P. & A. 15-16, 20-24, 26-27.)  Judge Stormes previously concluded that the trial court's evidentiary ruling and its use of CALJIC No. 2.50.02 did not infect the entire trial and violate Petitioner's due process rights. (Lodgment No. 3, Sirat v. Hernandez, No. 03cv0027-IEG(NLS), Report & Recommendation at 9, 11.)

United States District Court Judge Irma E. Gonzalez adopted Judge Stormes's recommendations and denied Sirat's 2003 habeas petition.  (Lodgment No. 4, Sirat v. Hernandez, No. 03cv0027-IEG(NLS), Order Adopting R. & R. at 2.)  As a result, Petitioner is now barred by 28 U.S.C. § 2244(b)(1) from presenting claims two, four and five in a second or successive habeas application.

The following claims remain in the pending Petition:  (1) The trial judge improperly increased Sirat's sentence in violation of Blakely (ground one); (2) evidentiary rulings were an abuse of discretion (ground three); (3) the failure to strike evidence amounted to a denial of compulsory process (ground six); and (4) Sirat was denied equal protection because the holding in People v. Engelman, 28 Cal. 4th 436, 49 P.3d 209, 121 Cal. Rptr. 2d 862, was not applied to his case (ground seven).  These claims were not alleged in Petitioner's prior application, but they are nevertheless barred by 28 U.S.C. § 2244(b)(2).

A claim not presented in a prior petition cannot be raised in a second or successive petition unless the petitioner shows that the claim "relies on a new rule of constitutional law . . . that was previously unavailable" or that the claim relies on facts not

previously discoverable.  28 U.S.C.A. § 2244(b)(2)(A)-(B).  Only

under these circumstances may a petitioner file a second or

successive habeas corpus application.  However, "[b]efore a second

or successive application permitted by this section is filed in the

district court, the applicant shall move in the appropriate court

of appeals for an order authorizing the district court to consider

the application."  28 U.S.C.A. § 2244 (b)(3)(A).

Sirat failed to seek or obtain the necessary authorization.

Indeed, his Petition is missing the section of the standard habeas

form asking whether he received permission from the Ninth Circuit

Court of Appeals to file a second petition.  Without permission

from the Ninth Circuit and a showing that either (a) the four new

claims are based on a newly-available constitutional rule, or (b)

the facts on which the claims are based establish Petitioner's

innocence and were previously undiscoverable, Sirat is not

authorized to file a second habeas corpus petition.  Accordingly,

the district court should **GRANT** Respondent's Motion to Dismiss the

Petition as successive.

**B.   Statute of Limitations**

Respondent argues that Sirat's Petition is time-barred under

AEDPA's one-year period of limitations.  (Resp't's Mem. 9-10.)  The

relevant part of the statute states:

> (d)(1) A 1-year period of limitation shall apply to
> an application for a writ of habeas corpus by a person in
> custody pursuant to the judgment of a State court.  The
> limitation period shall run from the latest of --
>
> (A) the date on which the judgment became
> final by the conclusion of direct review or the
> expiration of the time for seeking such review;
>
> (B) the date on which the impediment to
> filing an application created by State action
> in violation of the Constitution or laws of the

       United States is removed, if the applicant was prevented from filing by such State action;

       (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

       (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

       (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. § 2244(d) (West 2006).

    The California Supreme Court denied Sirat's petition for review on June 26, 2002.  (Lodgment No. 2, <u>People v. Sirat</u>, No. S106916, order at 1.)  The judgment became final on September 24, 2002, when Petitioner's ninety-day period in which to file a petition for certiorari to the United States Supreme Court expired. <u>Bowen v. Roe</u>, 188 F.3d 1157, 1158-59 (9th Cir. 1999).

    Under § 2244(d)(1), the statute of limitations on Sirat's federal petition began to run the next day, September 25, 2002. <u>See</u> <u>Patterson v. Stewart</u>, 251 F.3d 1243, 1245-46 (9th Cir. 2001) (explaining the application of Federal Rule of Civil Procedure 6(a) to the calculation of the limitations period under AEDPA).  Absent statutory tolling under § 2244(d)(2), or equitable tolling, September 24, 2003 was the last day on which Petitioner could file a timely federal habeas petition.   <u>Id.</u>

    On January 6, 2003, Sirat filed his first federal habeas petition in this Court, which was denied on the merits on October

23, 2003.  (Lodgment No. 3, <u>Sirat v. Hernandez</u>, No. 03cv0027-
IEG(NLS), Order Adopting R. & R. at 2.)  Appellate review of the
petition was completed on May 19, 2005, when the Ninth Circuit
Court of Appeals dismissed Petitioner's case for failure to perfect
the appeal.  (Lodgment No. 7, <u>Sirat v. Hernandez</u>, No. 03-57061,
order at 1.)  AEDPA's statute of limitations is not tolled during
the pendency of federal habeas proceedings.  <u>Duncan v. Walker</u>, 533
U.S. 167, 181-82 (2001).  As a result, the time between the filing
of Sirat's first federal petition and its dismissal cannot extend
the limitations period beyond September 24, 2003.  <u>Id</u>.

Under AEDPA, there are alternate dates from which the
limitations period may be calculated.  28 U.S.C.A. § 2244(d)(1)(B-
D).  The limitations period may begin to run when a state-created
impediment is removed, when a newly recognized constitutional right
is recognized or made retroactive, or on the date the factual
predicate of the claim could have been discovered with due
diligence.  <u>Id.</u>  Sirat has not asserted that any of these
circumstances apply to his case, nor has he set forth in his
Petition any facts sufficient to warrant calculating the
limitations period from a different date.  (<u>See</u> Pet. Attach. Mem.)

**1.  Statutory Tolling Does Not Save Sirat's Petition.**

The statute of limitations under AEDPA is tolled during the
pendency of any collateral attacks properly filed in state court
challenging a habeas petitioner's state conviction.  28 U.S.C.A. §
2244(d)(2).  Sirat filed his first state habeas petition on January
4, 2006, almost two years and six months after the statute of
limitations to file his federal petition had already run.  Because
his state petition was filed after the expiration of the AEDPA

1  limitations period, Petitioner's state court habeas proceedings

2  cannot toll the statute of limitations.  <u>Jimenez v. Rice</u>, 276 F.3d

3  478, 482 (9th Cir. 2001).  From this sequence of events, Sirat's

4  Petition appears to be time-barred.

5      **2.   Equitable Tolling Does Not Apply.**

6      In some cases, a Petitioner may be able to toll the

7  limitations period by demonstrating a basis for equitable tolling.

8  To justify equitable tolling, Sirat must establish extraordinary

9  circumstances beyond his control that made it impossible for him to

10  file his Petition on time.  <u>Stillman v. LaMarque</u>, 319 F.3d 1199,

11  1202 (9th Cir. 2003); <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107(9th Cir.

12  1999).  The failure to file a timely petition must be the result of

13  external forces, not the result of the petitioner's lack of

14  diligence.  <u>Miles</u>, 187 F.3d at 1107.  Sirat has the burden to

15  establish that extraordinary circumstances exist that warrant

16  equitable tolling.  <u>Miranda v. Castro</u>, 292 F.3d 1063, 1065 (9th

17  Cir. 2002) (citing <u>United States v. Marolf</u>, 173 F.3d 1213, 1218 n.3

18  (9th Cir. 1999)).

19      Petitioner has not alleged that equitable tolling should apply

20  to his case, and he has not provided any evidence to support the

21  application of equitable tolling.  Without extraordinary

22  circumstances beyond his control, there is no basis for equitable

23  tolling.  Thus, the district court should also **GRANT** Respondent's

24  Motion to Dismiss the Petition as untimely.

25  C.   <u>**Failure to State a Claim Which Raises a Federal Question**</u>

26      Ground six of Sirat's Petition states that the prosecution's

27  failure to provide the defense with Officer Underhill's

28  supplemental report, which discusses the fact that Ab Salam

23

urinated on herself, violated California Penal Code section 1054.1, and therefore the testimony should have been stricken.  (Pet. Attach. Mem. of P. & A. 24-26.)  Respondent argues that this claim does not properly state a federal question under the Constitution and should be dismissed.  (Resp't's Mem. 11.)

To present a cognizable federal habeas corpus claim, a state prisoner must allege that his conviction was obtained "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2254(a) (West 2006).  A petitioner must allege that the state court violated his federal constitutional rights.  <u>Hernandez</u>, 930 F.2d at 719; <u>Jackson v. Ylst</u>, 921 F.2d at 885; <u>Mannhalt v. Reed</u>, 847 F.2d 576, 579 (9th Cir. 1988).

Respondent is correct that a trial court's failure to strike evidence that was not produced in accordance with California Penal Code section 1054.1 does not present a federal question. Respondent, however, has misstated Petitioner's claim.  Sirat claims that because the evidence was not disclosed to his attorney, counsel was unable to prepare a proper defense.  (Pet. Attach. Mem. of P. & A. 24-25.)  He argues that the trial court's failure to strike the testimony amounted to a denial of adequate representation and a fair trial, and it contravened Petitioner's Sixth Amendment right to compulsory process.  (<u>Id.</u> at 25.)  Sirat's claim is that the trial court committed constitutional error and the state appellate court's rejection of this claim is "contrary to . . . clearly established Federal law . . . ."  28 U.S.C.A. § 2254(d)(1) (West 2006).  This claim is cognizable in federal habeas corpus under 28 U.S.C. § 2254(d).  Respondent's Motion to Dismiss

1  Ground Six of the Petition for failure to state a claim should be

2  **DENIED**.

3                          **V. CONCLUSION**

4       For the reasons set forth above, Respondent's Motion to

5  Dismiss the Petition for Writ of Habeas Corpus as a successive

6  petition, which is also barred by the statute of limitations,

7  should be **GRANTED**.

8       At the end of the memorandum in support of his habeas

9  petition, Sirat makes an off-the-cuff request for appointed

10 counsel.  (Pet. Attach. Mem. of P. & A. 27.)  This is made without

11 any supporting authority or rationale.  A habeas petitioner is not

12 entitled to the automatic appointment of counsel.  McCleskey v.

13 Zant, 499 U.S. 467, 495 (1991); Chaney v. Lewis, 801 F.2d 1191,

14 1196 (9th Cir. 1986).  Petitioner's request for appointed counsel

15 is, therefore, **DENIED**.

16      This Report and Recommendation will be submitted to the United

17 States District Court judge assigned to this case, pursuant to the

18 provisions of 28 U.S.C. § 636(b)(1).  Any party may file written

19 objections with the Court and serve a copy on all parties on or

20 before August 17, 2007.  The document should be captioned

21 "Objections to Report and Recommendation."  Any reply to the

22 objections shall be served and filed on or before September 3,

23 2007.  The parties are advised that failure to file objections

24 within the specified time may waive the right to appeal the

06cv0848-L (RBB)

1  district court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153, 1157 (9th

2  Cir. 1991).

3

4  Dated: July 13, 2007                          _____

5                                     RUBEN B. BROOKS
                                      United States Magistrate Judge

6  cc:   Judge Lorenz
         All parties of record

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28